IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAHID RAHMAN,

                Plaintiff,

v.                                               OPINION and ORDER

ANDREW M. SAUL, Commissioner,         19-cv-501-jdp
Social Security Administration,

                Defendant.

---

Plaintiff Shahid Rahman, an employee of the Social Security Administration, was passed over for a promotion. He says that the administration discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. He contends that the reasons his supervisor gave for promoting one of Rahman's coworkers were a pretext for discrimination. The commissioner has moved for summary judgment. Dkt. 19. Rahman hasn't adduced evidence that would support a reasonable finding that the supervisor's reasons were pretextual, so the court will grant the commissioner's motion and close this case.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Rahman, an Asian-American, has worked in the Social Security Administration's Eau Claire office since 2002. Rahman works as a claims specialist, adjudicating claimants' eligibility for benefits under the Social Security Act.

Ryan Kulinski became the district manager of the Eau Claire office in 2015. In 2017, he posted a vacancy for a claims technical expert position. Claims technical experts adjudicate

the administration's most complex, non-routine cases and take a lead role in providing training and mentoring to other employees.

Five people, including Rahman, applied for the position. Kulinski reviewed the applications and ranked the applicants. His top choice was Christina Rabideaux, another claims specialist in the Eau Claire office, with Rahman ranked second.[1] Kulinski explained his ranking of the applicants in a memo to his supervisor. Kulinski said that Rabideaux had volunteered for additional training to allow her to adjudicate claims under both Title II (disability insurance benefits) and Title XVI (supplemental security income) of the Social Security Act. He also noted that her expertise in adjudicating claims under Title XVI was underrepresented among claims technical experts in the Eau Claire office at the time. And he remarked that she had strong communication skills. After receiving approval from his supervisor, Kulinski promoted Rabideaux, informing office staff of the promotion by email on November 6, 2017.

ANALYSIS

Rahman contends that Kulinski discriminated against him on the basis of race when Kulinski promoted Rabideaux. He brings his claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, both of which prohibit workplace discrimination on the basis of race. "The legal analysis for discrimination claims under Title VII and § 1981 is identical," *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019), and the parties don't discuss Rahman's claims separately, so the court will address them together. The commissioner

---

[1] The parties do not explicitly state whether Rabideaux is white, but based on Rahman's allegation that the Eau Claire office has not promoted any nonwhite employee since Rahman was hired, discussed below, the court infers that she is white.

is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive the commissioner's motion for summary judgment, Rahman "must produce sufficient admissible evidence, taken in the light most favorable to [him], to return a jury verdict in [his] favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).

At summary judgment, under the Seventh Circuit's simplified approach to discrimination cases, the court reviews the evidence as a whole, keeping its focus on the core question of whether the evidence would allow a reasonable jury to find that Rahman's race was a motivating factor in Kulinski's choice to promote Rabideaux. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

The parties frame the issue in terms of Rabideaux and Rahman's relative qualifications, but that isn't what's really at issue here. The commissioner says that Rabideaux was objectively more qualified than Rahman, using Kulinski's hiring criteria. Rahman argues that Kulinski selected those criteria to mask his discriminatory decision. Rahman contends that his qualifications actually make him more qualified than Rabideaux: three years more experience with the administration, a few months of prior experience working as a claims technical expert in a temporary capacity, several awards he received from the administration for his work, and his educational credentials.

But the question is not which of the two candidates is more qualified. The question is whether Kulinski sincerely believed the reasons he gave to support his decision to promote Rabideaux. *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019). The court doesn't ask whether Kulinski's choice of Rabideaux was fair or wise, nor does it second-guess his judgment about what qualifications were most important for the job. It asks only whether

3

his stated reasons for promoting Rabideaux rather than Rahman masked discriminatory intent. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016).

Rahman's cited qualifications were reflected in the scores generated by the agency's human-resources software, which gave the two candidates equal scores. Rahman's own opinion that he was better qualified doesn't create a material factual dispute, *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 381 (7th Cir. 2020), and his evidence does not show that he was overwhelmingly more qualified than Rabideaux.

## A. Kulinski's hiring criteria

Rahman's main argument is that Kulinski chose the criteria after the fact to justify his racially biased promotion decision. Kulinski's memo identified three reasons to support his decision to promote Rabideaux: (1) Rabideaux was trained to adjudicate claims for benefits under Title II and Title XVI, but Rahman was trained to adjudicate only Title II claims; (2) Rabideaux, unlike Rahman, had extensive experience adjudicating Title XVI claims, experience that was underrepresented in the Eau Claire office; and (3) Rabideaux's communication skills were superior to Rahman's. Rahman concedes that Rabideaux had broader training and more Title XVI experience than he did, but he says that he also had good communication skills.

Kulinski's first two reasons require some background information about the division of labor in the Eau Claire office. The administration's claims specialists and claims technical experts fall into two categories. Some are specialists, working in a single type of claim, either Title II or Title XVI.[2] Others are generalists, trained to handle claims under both Titles II and

---

[2] Specialists who are trained to handle Title II claims are also trained to handle Title XVIII claims, which govern health insurance for the aged and disabled. For simplicity's sake, the court

XVI. Historically, the Eau Claire office relied on specialists, with a Title II unit and a Title XVI unit, each with its own set of claims specialists and claims technical experts focusing on claims under a single title. When Kulinski became the manager of the Eau Claire office, he decided to adopt the generalist approach. So he offered crossover training to all office staff so that Title II specialists could gain experience in Title XVI, and vice versa.

Kulinski posted the claims technical expert position as a generalist position rather than as a specialized Title II or Title XVI position. At the time, the office's other four claims technical experts were all specialists, with three in Title II and only one in Title XVI. Because of this imbalance, Kulinski and his assistant district manager, Stacy King, discussed the need to hire someone with extensive Title XVI experience, Dkt. 28 (King Dep. 18:8–20), although that preference wasn't explicitly stated in the posting. Rahman was a Title II claims specialist, and he had declined crossover training in Title XVI. Rabideaux had begun as a Title XVI claims specialist, but she had requested and received crossover training under Title II, after which she worked as a generalist. Kulinski has provided valid reasons for preferring a generalist with Title XVI experience, and Rahman has no direct evidence to dispute the explanation.

Rahman contends that a jury could infer that Kulinski's first two reasons were pretextual from the circumstantial fact that Kulinski drafted his memo after reviewing the applications. But that's not a reasonable inference because the position was posted as a generalist position from the start. It isn't surprising that a candidate formally trained in both Title II and Title XVI would be preferable to a candidate formally trained in only Title II. Nor is it surprising that Kulinski would prefer to hire a candidate with strong Title XVI experience

---

will follow the parties' practice of referring to these specialists simply as Title II specialists.

to address the imbalance in expertise among the office's claims technical experts. King testified that she and Kulinski discussed the importance of a strong Title XVI background before Kulinski posted the position. Rahman adduces no evidence to rebut King's testimony.

Rahman also contends that Kulinski's statements about the candidates' relative communication skills were pretextual because he didn't mention communication skills in his deposition when he explained why he promoted Rabideaux. This might support the inference that communication skills were not that important to Kulinski. But even if Rahman could show that his communication skills were better than Rabideaux's, and that Kulinski knew it, that would not be enough to forestall summary judgment for the commissioner. Kulinski's first two reasons stand unrebutted, which dooms Rahman's pretext argument. *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 798 (7th Cir. 2015) (if defendant offers multiple nondiscriminatory reasons for hiring decision, plaintiff must adduce evidence that all are pretextual).

## B. Other evidence of pretext

Rahman offers two other circumstantial arguments for why Kulinski's stated reasons for promoting Rabideaux were pretextual. First, he says that Kulinski may have deviated from the agency's established hiring procedures. Such a deviation can be evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005). But it is unclear precisely what hiring established procedure Rahman believes Kulinski failed to follow. The only evidence he identifies is an affidavit from King, Rahman's direct supervisor, in which she stated that she may have completed a recommendation form on behalf of Rahman that contained five or six categories for narrative evaluation.[3] Dkt. 22-11, at 2. He says, without explanation, that this

---

[3] Both Rabideaux and Rahman were highly recommended by their supervisors. Rahman does

testimony is "evidence that the agency employs a standardize[d] criteria." Dkt. 34, at 8. The court takes Rahman to contend that the agency had a practice of evaluating applicants based on the categories contained on the recommendation form described by King, and that Kulinski chose not to evaluate the applicants based on those categories. That's at best weak evidence of an established hiring practice.

In any event, King explained in her deposition that she made this statement because she had provided both written and verbal recommendations for different candidates at different times. Dkt. 28 (King Dep. 16:22–17:1). She further testified that standardized recommendation forms weren't required for non-management positions such as this one, that the Eau Claire office didn't have a standard recommendation form, and that she believed that she verbally recommended Rahman to Kulinski. *Id.* at 17:1–10. Rahman hasn't adduced any evidence suggesting that the form described by King reflected an established hiring procedure, so King's statement that she may have completed such a form isn't evidence of pretext.

Second, Rahman says that the Eau Claire office has promoted only white people since he began working there in 2002. But the only evidence he cites in support of this contention is his own deposition testimony. *See* Dkt. 26 (Rahman Dep. 114:25–115:8). Without evidence of how many promotions were available during that period, the number and races of the applicants for each position, and the applicants' relative qualifications, Rahman's testimony that only white employees received promotions during that span "is next to worthless." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1177 (7th Cir. 2002) (quoting *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996)). Moreover, Kulinski didn't become the district manager

---

not contend that King's recommendation is evidence that he was better qualified than Rabideaux.

until 2015, meaning that Kulinski wasn't making hiring decisions for the bulk of the 15-year period that Rahman describes, further diminishing the probative value of his testimony.

Even if Rahman had provided statistical context for his testimony, such evidence isn't enough, standing alone, to support a disparate treatment claim like this one. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997); *Banthia v. Roche Diagnostics Operations, Inc.*, 502 F. App'x 571, 574 (7th Cir. 2012). This is because Rahman has the burden of adducing evidence that Kulinski's choice to promote Rabideaux was based on discrimination. *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 431 (7th Cir. 2010). Without evidence to connect evidence of the office's historical hiring practices to the particular hiring decision at issue, such evidence gives only limited insight into whether Kulinski's hiring preferences masked discrimination. *See Purtue v. Dep't of Corr.*, No. 18-cv-204-jdp, 2019 WL 3858028, at *5 (W.D. Wis. Aug. 16, 2019).

CONCLUSION

Rabideaux and Rahman were both qualified for the claims technical expert position, but Kulinski hired Rabideaux, who better fit his preferences for a candidate with formal training in both Title II and Title XVI and extensive experience with Title XVI. Rahman hasn't adduced evidence that would support a reasonable finding that Kulinski's preferences were pretextual.

ORDER

IT IS ORDERED that defendant Andrew M. Saul's motion for summary judgment, Dkt. 19, is GRANTED. The clerk of court is ordered to enter judgment in favor of the defendant and close this case.

Entered October 1, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge